MARY JANE LUSTIK v. ROY RANKILA AND ANOTHER, SPECIAL ADMINISTRATORS OF ESTATE OF RUTH RANKILA.

131 N. W. (2d) 741.

December 4, 1964—No. 39,121.

*Spellacy, Spellacy & Lano,* for appellant.
*O'Leary, Trenti & Berger,* for respondents.

OTIS, JUSTICE.

This lawsuit is brought to recover damages for personal injuries sustained by appellant, Mary Jane Lustik, as a result of a head-on collision between vehicles driven by her and by decedent, Ruth Rankila. Previously an action was brought against Mrs. Lustik under Minn. St. 573.02 for the death of Mrs. Rankila. A motion to consolidate the two proceedings was denied on the authority of Lambach v. Northwestern Refining Co. Inc. 261 Minn. 115, 111 N. W. (2d) 345, which held that because of the statutory presumption of decedent's due care, § 602.04, it was improper to do so.[1] The court ordered that the trustee's suit be given priority since it was first sued. The jury rendered a verdict awarding the trustee damages against Mrs. Lustik.[2] In the present litigation Mrs. Rankila's special administrator moved for summary judgment, claiming that the issue of Mrs. Lustik's contributory negligence was res judicata and that the verdict estopped her from asserting this claim. The trial court granted the motion and Mrs. Lustik appeals.

In essence it is the position of appellant that the doctrine of estoppel

---

[1] Minn. St. 602.04 reads: "In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."

[2] It appears without dispute that in the trustee's action the claims exceeded the limits of Mrs. Lustik's liability policy, and she therefore retained her own counsel who collaborated with the liability carrier's attorneys in presenting her defense.

by verdict is not applicable because (1) the estoppel is not mutual; (2) the issues are not the same; (3) the parties are not identical and do not have privity; (4) the inability to counterclaim gives an arbitrary and unfair advantage to the first person suing; and (5) under Minn. Const. art. 1, § 8, there is no right without a remedy.[3]

We have carefully considered all of appellant's contentions and acknowledge that the statutory presumption of decedent's due care may lead to an unseemly race to the courthouse, as Mr. Chief Justice Knutson predicted in the Lambach case. However, as long as Minn. St. 602.04 remains on the books, litigants will continue to find themselves burdened with duplicated litigation and with the necessity for maneuvering for the tactical advantage of being the first to trial.[4]

Appellant concedes that in the prior action for death by wrongful act the jury necessarily found she was negligent and that her negligence was a proximate cause of the accident. However, she seeks to avoid the effect of this determination by urging that in a subsequent action, without decedent's presumption of due care, Mrs. Rankila's negligence might be found to have insulated prior negligence on the part of Mrs. Lustik. It appears to be Mrs. Lustik's contention that the so-called "last clear chance" doctrine would now be available to her and that the verdict against her in the action for death by wrongful act does not therefore create an estoppel because the issues in the

---

[3]Minn. Const. art. 1, § 8, provides: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws."

[4]As a practical device to minimize the impact of submitting two different standards of negligence, and to avoid having damages presented by one side and not the other, it may be advisable hereafter to adopt a rule that under circumstances of this kind the surviving claimant's contributory negligence and decedent's own negligence shall first be tried in the survivor's action on the question of decedent's liability only. Such a procedure would achieve something approaching an equal footing for the survivor, free from conflicting presumptions, but would not necessarily prevent successive lawsuits.

first action were decided under different principles of law. We do not agree. There is no showing that the evidence in either action would support this theory. The conclusion is inescapable that whether or not Mrs. Rankila is now found to be negligent, there has already been a judicial determination in proceedings to which Mrs. Lustik was a party establishing as a fact that Mrs. Lustik was herself guilty of negligence which was a proximate cause of this collision. The court's charge on the issue of Mrs. Lustik's negligence would be precisely the same in this litigation as it was in the first action.[5] The test is: Did the first action *necessarily* decide that Mrs. Lustik was guilty of negligence which proximately caused the accident and the injuries for which she here seeks damages?[6] Obviously, the answer is in the affirmative. Her negligence has already been thoroughly litigated. There has been no appeal. There is no principle of law which is not common to both actions on the decisive question of Mrs. Lustik's contributory negligence. She is therefore barred from recovering.

The dissent written by Mr. Justice Thomas Gallagher states that appellant is entitled to a second trial because she had no opportunity to litigate her affirmative claims without the statutory presumption of § 602.04 "against her." We are not concerned with decedent's presumption of due care but only with plaintiff's lack of care. Section 602.04 is not a sword but a shield. It has no bearing on any negligence except that of decedent and no application to the issue of Mrs. Lustik's contributory negligence.

An interpretation of TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468, has been suggested which we believe is at complete variance with what that opinion holds. In discussing the decedent's

---

[5] Mrs. Lustik acknowledges that the law is correctly stated in 10 Dunnell, Dig. (3 ed.) § 5162, thus: "* * * For a judgment to operate as an estoppel by verdict it must appear that the controlling facts presented in the second suit existed at the time of the former litigation and that the issue adjudicated in the first suit is the identical issue involved in the second suit; * * *."

[6] Wolfson v. Northern States Management Co. 221 Minn. 474, 479, 22 N. W. (2d) 545, 548.

presumption of due care, this court stated in the TePoel decision (236 Minn. 492, 53 N. W. [2d] 473):

"* * * The court's instruction on the issue of contributory negligence, if properly given, will require a *finding against defendant* if the evidence is in balance or fails to preponderate in his favor. The presumption cannot and should not be permitted to cast any greater *burden upon defendant* than he already has under such instructions." (Italics supplied.)

The "finding against defendant" and the "burden upon defendant" to which we referred in that opinion had only to do with a finding against defendant and his burden in connection with proving decedent's contributory negligence and had no bearing whatever on the issue of defendant's own negligence in that case.

It is contended that estoppel by verdict is not applicable unless the adversary of the party against whom the doctrine is invoked appears in the same capacity in both actions. This is not the law of Minnesota. What we have held in Olson v. Linster, 259 Minn. 189, 107 N. W. (2d) 49, and in Schmitt v. Emery, 215 Minn. 288, 290, 9 N. W. (2d) 777, 779, is that the doctrine may not be invoked against a party to the subsequent action who appears in a different capacity from the losing party in the initial litigation. This fundamental distinction is required by due process which prevents the result of a prior suit from binding *adversely* a litigant who was a stranger to it and had no opportunity to be heard.[7] But our court and other jurisdictions do not require that in a second action one who *invokes* the doctrine of estoppel in his own favor against an adversary who appeared in identical capacities in both suits must also have been a party to the first action. In Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N. W. (2d) 364, 54 A. L. R. (2d) 316, we squarely held that estoppel by prior verdict was available in favor not only of a party who appeared in a different capacity but also of one who was a complete stranger to the prior litigation. There we said (245 Minn. 256, 72 N. W. [2d] 369):

---

[7]Coca Cola Co. v. Pepsi-Cola Co. 36 Del. 124, 130, 172 A. 260, 262.

"* * * While the present defendants were not parties to that action, it is the same issue—dependent on the same evidence—that plaintiff seeks to litigate once more in the present proceedings. Defendants assert that the judgment in the prior action constitutes a bar thereon. They recognize the general rule that a former judgment is not *res judicata* in a subsequent action unless the parties in the latter are the same or in privity with those in the former proceeding * * *; but submit authorities defining an exception to this rule and assert that the facts in the instant case bring it within such exception. * * *

* * * * *

"* * * We have recognized this exception to the doctrine of mutuality otherwise essential to *res judicata* * * *.

"Based on the facts described and the decisions cited, we hold that on the issue of fraud plaintiff has had his day in court; that the issue has been fully litigated and determined; and in consequence that any attempt to relitigate it in the present proceedings is barred." (Citations omitted.)

In abandoning the strict rule of mutuality of estoppel, this court cited three leading cases on the subject: Bernhard v. Bank of America Nat. Trust & Sav. Assn. 19 Cal. (2d) 807, 122 P. (2d) 892; Coca Cola Co. v. Pepsi-Cola Co. 36 Del. 124, 172 A. 260; and Bruszewski v. United States (3 Cir.) 181 F. (2d) 419. The test prescribed in Bernhard by the present Chief Justice, Roger Traynor, was this (19 Cal. [2d] 813, 122 P. [2d] 895):

"* * * Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

In the instant case all three requirements have been met.

The court in the Coca Cola case based its decision on considerations of public policy which demand an end to litigation where a party has had a full, free, and untrammeled opportunity to present facts pertinent to a decisive issue. That decision rejects the argument

that a litigant may have pursued his cause with less zeal in the first action than he might in the subsequent one.[8]

The court in Bruszewski held that orderly judicial administration foreclosed a party from twice litigating the same issue despite a lack of mutuality if there had been a full and fair opportunity to be heard previously. Three other Federal cases discuss exhaustively the abandonment of mutuality as a prerequisite to the application of estoppel: Judge Charles Clark in a dissent predating Bruszewski, Riordan v. Ferguson (2 Cir.) 147 F. (2d) 983, 988; and more recently opinions from the same court in Fleischer v. Paramount Pictures Corp. (2 Cir.) 329 F. (2d) 424, and Zdanok v. Glidden Co., Durkee Famous Foods Division (2 Cir.) 327 F. (2d) 944, 954. In Zdanok the court stated:

"This doctrine of the need for mutuality of estoppels, criticized by Bentham[9] over a century ago as destitute of any semblance of rea-

_____

[8]von Moschzisker, *Res Judicata,* 38 Yale L. J. 299, 302.

[9]The reference to Bentham is taken from Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stanford L. Rev. 281, 284, note 6, as follows:

"Bentham, *Rationale of Judicial Evidence,* in 7 Works of Jeremy Bentham 171 (Bowring ed. 1843). Portions of Bentham's comment have been extensively quoted and are therefore familiar.

" 'Another curious rule is, that, as a judgment is not evidence *against* a stranger, the contrary judgment shall not be evidence *for* him. If the rule itself is a curious one, the reason given for it is still more so:— "Nobody can take benefit by a verdict, who had not been prejudiced by it, had it gone contrary:" a maxim which one would suppose to have found its way from the gaming-table to the bench. If a party be benefited by one throw of the dice, he will, if the rules of fair play are observed, be prejudiced by another: but that the consequence should hold when applied to justice, is not equally clear. This rule of *mutuality* is destitute of even that semblance of reason, which there is for the rule concerning *res inter alios acta.* There is reason for saying that a man shall not lose his cause in consequence of the verdict given in a former proceeding to which he was not a party; but there is no reason whatever for saying that he shall not lose his cause in consequence of the verdict in a proceeding to which he *was* a party, merely because his adversary was not. It is right enough that a verdict obtained by A against B should not bar the claim of a third

son, and as 'a maxim which one would suppose to have found its way from the gaming-table to the bench,' ibid. fn. 14, has been much eroded in recent years. Perhaps the leading federal decision is Judge Hastie's in Bruszewski v. United States, * * * which this court followed in Adriaanse v. United States, * * *. We see no purpose in multiplying citations since it is recognized that the widest breach in the citadel of mutuality was rammed by Justice Traynor's opinion in Bernhard v. Bank of America * * *."

While Gammel, Coca Cola, and the Federal cases cited involved plaintiffs who brought successive suits against different defendants, the estoppel rule has been applied to plaintiffs who have not previously selected their forum but have been defendants in the prior actions. Two California cases have foreclosed litigation of issues which were decided adversely to plaintiffs in previous suits where they appeared as defendants, notwithstanding the fact that the defendants in the second action were not parties to the first action. San Francisco Unified School Dist. v. California Bldg. Maintenance Co. 162 Cal. App. (2d) 434, 328 P. (2d) 785; Abbott v. Western Nat. Ind. Co. 165 Cal. App. (2d) 302, 331 P. (2d) 997.[10]

Good Health Dairy Products Corp. v. Emery, 275 N. Y. 14, 9 N. E. (2d) 758, 112 A. L. R. 401, presented a situation nearly identical with that before us in the instant case. There, a car *operator* (the Rankila trustee) recovered damages against a truckdriver (Mrs. Lustik) and truck owner, who subsequently brought a separate suit against the car *owner* (the Rankila administrator), a stranger to the prior litigation. Although the defendant in the second action was sued

party C; but that it should not be evidence in favour of C against B, seems the very height of absurdity. The only fragment of a reason which we can find in the books, having the least pretension to rationality, is this,—that C, the party who gives the verdict in evidence, may have been one of the witnesses by means of whose testimony it was obtained. The inconclusiveness of this reason we have already seen.' Ibid."

[10]See, also, Collins, *Collateral Estoppel in Favor of Nonparties: A Defendant's "Fringe Benefit,"* 41 Ore. L. Rev. 30, 35; Comment, 35 Yale L. J. 611; 27 Brooklyn L. Rev. 174.

on the theory of vicarious or derivative liability,[11] it is significant that the New York court spoke in much broader terms than were necessary to invoke that exception to the rule requiring mutuality. The court said (275 N. Y. 18, 9 N. E. [2d] 759):

"Behind the phrase *res judicata* lies a rule of reason and practical necessity. One who has had his day in court should not be permitted to litigate the question anew. Although normally it is necessary that mutuality of estoppel exist, an exception is at times made where the party *against* whom the plea is raised was a party to the prior action and 'had full opportunity to litigate the issue of its responsibility.'

\* \* \* \* \*

"\* \* \* And those defendants, now the plaintiffs in the case at bar, *although they had a full opportunity to show their freedom from negligence,* were found liable and are bound by the verdict against them. It is true that [defendant] Mary C. Emery, not being a party to the earlier actions, and not having had a chance to litigate her rights and liabilities, is not bound by the judgments entered therein, but, on the other hand, that is not a valid ground for allowing the plaintiffs to litigate anew the precise questions which were decided against them in a case in which they were parties." (Italics supplied in part.)

In the instant case, as in the Good Health Dairy Products case, Mrs. Lustik "had a full opportunity to show [her] freedom from negligence" but was nevertheless found negligent and is now bound by the verdict against her.

For these reasons the trial court's decision was correct and is affirmed.

Affirmed.

MURPHY, JUSTICE (concurring specially).

I agree with the result. I cannot agree with the views expressed in the majority opinion in so far as they might be interpreted to propose the repeal of Minn. St. 602.04. The legislature has the power

---

[11]See, Myhra v. Park, 193 Minn. 290, 258 N. W. 515; Miller v. Simons, 239 Minn. 523, 528, 59 N. W. (2d) 837, 840; Christianson v. Hager, 242 Minn. 41, 43, 64 N. W. (2d) 35, 36.

in civil cases to establish a rule of law relating to presumptive evidence that is essentially a regulation of the burden of proof. State v. Edwards, 269 Minn. 343, 130 N. W. (2d) 623; TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468; State v. Higgin, 257 Minn. 46, 99 N. W. (2d) 902. There is a valid reason for the presumption. It may be assumed that in adopting § 602.04 the legislature had in mind that in the absence of the testimony of eyewitnesses to an accident or other evidence sufficient to dispell or rebut a presumption of due care, it is reasonable to assume that the decedent, acting on the instinct of self-preservation, was in the exercise of ordinary care. See Mr. Chief Justice Dell's concurring opinion in Lambach v. Northwestern Refining Co. Inc. 261 Minn. 115, 125, 111 N. W. (2d) 345, 352; Roeck v. Halvorson, 254 Minn. 394, 95 N. W. (2d) 172, 44 Minn. L. Rev. 352; 25 C. J. S., Death, §§ 80 and 89, pp. 1207 and 1221; 31A C. J. S., Evidence, § 135.

THOMAS GALLAGHER, JUSTICE (dissenting).

Shortly after the accident and while Mary Jane Lustik was still hospitalized therefrom, the action for death by wrongful act under Minn. St. 573.02[1] was commenced against her. Attorneys representing her automobile liability insurer took over the defense of this action and remained in complete charge of it throughout. No counterclaim on her behalf could be interposed therein because plaintiff-

---

[1]Minn. St. 573.02, subd. 1, provides in part: "When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 2 may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. * * * The recovery in such action * * * shall be for the exclusive benefit of the surviving spouse and next of kin * * *. Funeral expenses and any demand for the support of the decedent, other than old age assistance, allowed by the court * * * are first deducted and paid."

Subd. 2 of this section provides in part: "Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction * * * shall appoint a suitable and competent person as trustee to commence or continue such action * * *."

trustee there did not appear as personal representative of the estate of Ruth Rankila under § 573.01.[2]

Upon her release from the hospital, the present action for injuries sustained in the accident was commenced by Mrs. Lustik against the personal representative of the estate of Ruth Rankila, deceased, under § 573.01. When the two cases were called for trial at the April 1962 term of the St. Louis County District Court, motions were made for their consolidation. The court in reliance upon Lambach v. Northwestern Refining Co. Inc. 261 Minn. 115, 111 N. W. (2d) 345,[3] denied such motions and directed that the action for death by wrongful act have precedence as it had been commenced first.

In the trial of that action, the court instructed the jury pursuant to § 602.04[4] that in so far as Ruth Rankila was concerned there was a presumption that she had exercised due care for her safety at the time of the accident and that the jury was to determine whether

---

[2]Minn. St. 573.01 provides in part: "A cause of action arising out of an injury to the person dies with the person * * * except as provided in section 573.02. It also dies with the person against whom it exists, except a cause of action arising out of bodily injuries or death caused by the negligence of a decedent survives against his personal representatives."

[3]In Lambach v. Northwestern Refining Co. Inc. 261 Minn. 115, 111 N. W. (2d) 345, the court in substance held that, in view of Minn. St. 602.04, cases in which a trustee of a decedent sues to recover for his death should not be consolidated with cases in which the representative of the estate of the same decedent is sued as a defendant.

[4]Minn. St. 602.04 provides: "In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action." This was adopted at the 1957 legislative session and became effective April 29, 1957; presumably, it was intended to counteract the effect of this court's decision in TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468, wherein we held that the jury should not be instructed with respect to this presumption in cases where the burden of proving contributory negligence rests on the party against whom a presumption of due care operates.

the evidence was sufficient to rebut such presumption. The jury returned a verdict of $17,648 in favor of Roy Rankila as trustee against Mary Jane Lustik as defendant in such action. This verdict in effect determined that the latter had been negligent at the time of the accident and that such negligence had been a proximate cause thereof. After the trial of the action for death by wrongful act, counsel for the special administrator of the estate of Ruth Rankila, as defendant in the present action, moved for summary judgment therein on the ground that the verdict in the action for death by wrongful act was res judicata on the issue of negligence in that thereunder it had been determined that Ruth Rankila was not guilty of negligence proximately causing such accident and that Mary Jane Lustik was guilty of negligence.

In a memorandum attached to its order granting this motion, the court stated:

"* * * this Court feels that the fact issue between the drivers of the two vehicles [Mary Jane Lustik and Ruth Rankila] has been litigated and a determination made in a Court of competent jurisdiction. It is clear to this Court that the adversary requirement pointed out in the case of Bunge vs. Yager, 236 Minn. 245, 52 N. W. 2d 446 is amply satisfied. The determination by the jury in the prior action was determinative of the claimed negligence of the drivers of both vehicles. * * * hence, this Court feels that the issues of negligence could not be re-litigated.

"The Court further relies on Radmacher vs. Cardinal [264 Minn. 72] 117 N. W. 2d 738."

On appeal from the summary judgment herein plaintiff contends that the parties in the two cases are not identical, and further that the issues sought to be litigated in the present action are not identical to those in the prior action in that in the present action the presumption of due care as covered by § 602.04 will have no bearing upon the jury's determination of issues relative to Ruth Rankila's negligence.

■ It is well established that before a verdict in one action can operate as an estoppel in a subsequent action the issue involved must

be identical; and likewise the adversaries must appear in the same capacity. Myhra v. Park, 193 Minn. 290, 258 N. W. 515; Schmitt v. Emery, 215 Minn. 288, 9 N. W. (2d) 777; Halloran v. Knoph, 243 Minn. 120, 66 N. W. (2d) 551; Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N. W. (2d) 364, 54 A. L. R. (2d) 316; Olson v. Linster, 259 Minn. 189, 107 N. W. (2d) 49. Thus, in the Olson case we stated (259 Minn. 191, 107 N. W. [2d] 50):

"* * * We have held on a number of occasions that issues determined by verdict or judgment in a prior action are conclusive only as to parties to such action and their privies, Halloran v. Knoph, 243 Minn. 120, 66 N. W. (2d) 551, and that, before estoppel against a party may arise under such circumstances, it must appear that such party appears in the second action in the same capacity that he appeared in the prior action."

Defendant in the present action is a statutory entity created under § 525.30[5] and appears by virtue of § 573.01 as personal representative of the estate of Ruth Rankila, deceased. As such, his capacity is distinct and separate from that of plaintiff-trustee in the prior action whose entity is derived from § 573.02. That this distinction is important becomes apparent when it is noted that in the prior action § 602.04 was applicable in favor of plaintiff there because the action was instituted under § 573.02; but offers no help to defendant in the present action where as personal representative of the estate he lacks authority to invoke § 602.04 in favor of decedent. Accordingly, in the action for death by wrongful act, pursuant to § 602.04 the jury was instructed to determine whether the presumption of due care which favored decedent therein had been rebutted by the evidence. The effect of this instruction upon a jury is noted in TePoel v. Larson, 236 Minn. 482, 492, 53 N. W. (2d) 468, 473, as follows:

[5] Minn. St. 525.30 provides: "Upon a showing of necessity or expediency, the court with or without notice may appoint a special administrator whether a petition for general administration or proof of will has been filed or not. There shall be no appeal from any order appointing or refusing to appoint a special administrator."

"Under these circumstances, the only effect of giving the presumption to the jury is to lead it to believe that even though it is convinced that defendant has sustained the burden of proving by a fair preponderance of the evidence that decedent was guilty of contributory negligence it may still decide the issue against defendant on account of the presumption of due care. Obviously, such a result is wrong. The court's instruction on the issue of contributory negligence, if properly given, will require a finding against defendant if the evidence is in balance or fails to preponderate in his favor. The presumption cannot and should not be permitted to cast any greater burden upon defendant than he already has under such instructions."

The disadvantage to plaintiff by this procedure is obvious and is emphasized by the fact that she had no choice as to her position in the prior litigation. She did not choose the forum for it and could only appear defensively therein. She had there no opportunity to litigate her affirmative claims without the statutory presumption embodied in § 602.04 against her. She was without authority to interpose a counterclaim or to present her claims for injuries in a consolidated trial of the two cases. She lacked completely the opportunity of establishing decedent's liability under evidentiary rules not "stacked" against her. The instructions given in the prior action as to the presumption of decedent's due care pursuant to § 602.04 would have been erroneous except for the statute which now gives evidentiary stature to the presumption. TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468.

In Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N. W. (2d) 364, cited in the majority opinion, we held merely that the defense of res judicata was available in favor of the defendants therein who were not parties to a prior action in which the identical plaintiff unsuccessfully sought to establish that they had been guilty of fraudulent conduct. In the subsequent action plaintiff again sought to establish the same claim of fraud against the same individuals, but was held barred from so doing because of the prior judgment on this issue. As we there pointed out, this was because plaintiff had deliberately selected the prior forum where neither his pleadings nor his proof had been limited; and where he had had the opportunity of presenting his evi-

dence without restrictive evidentiary rules; and because the evidence which formed the basis of the prior judgment against him was to be submitted by him in the second action in support of the identical claim of fraud as to the identical individuals. Obviously, that decision would have no application here where Mary Jane Lustik was without the right to assert an affirmative claim in the prior action, and where in the prior action plaintiff therein had the benefit of the presumption provided in § 602.04. While other cases cited in the majority opinion give expression to the general rules governing estoppel by verdict in ordinary situations, none of them relate to the exceptional procedural questions presented here.

SHERAN, JUSTICE (dissenting).

Estoppel by verdict facilitates the administration of justice in preventing relitigation by one party of a fact issue previously decided against him fairly. To apply this rule when the adverse determination was reached, or *possibly* reached, because of a principle of law applicable only because the plaintiff in the prior action for damages for wrongful death is given preferential treatment by reason of our statute does not serve this purpose.

In my opinion, the statutory presumption of due care does not relate exclusively to the issue of the decedent's negligence. It does so in form, but not in substance or practical effect.

An instruction which permits a jury to presume due care on the part of one automobile driver, even though the evidence in the absence of such presumption would compel a finding of negligence, necessarily affects the jury's evaluation of the other driver's conduct. If a two-car collision is due to the fault of one or the other or both of the drivers, the process which eliminates the conduct of one as causative inevitably casts responsibility on the other. An intersection collision, for example, may occur because one driver or the other failed to yield the right-of-way. If the jury is free to presume that a deceased driver had the right-of-way regardless of the evidence, it is bound to find that the other failed to yield. A head-on collision, as another instance, may occur because one driver or the other or both crossed the centerline. The statutory presumption may result in a jury finding that

the decedent was in his own lane of travel at impact. If so, it must find the defendant driver to have been in the wrong lane to account for the accident. Thus, the residual effect of the presumption is to influence decision as to the negligence of both drivers.

The unfairness of the situation which follows from the application of the statute in favor of the plaintiff only in an action for death by wrongful act seems evident. But until a change is made by legislative or judicial action, I believe that an adjudication of liability in an action for death by wrongful act should not bar subsequent assertion by the defendant of a claim for damages resulting from the occurrence.