Kenneth HAIR, et al., Appellants,

v.

William MILLER, Defendant,

St. Louis County, Respondent.

No. CX–85–25.

Court of Appeals of Minnesota.

Sept. 24, 1985.

Robert C. Falsani, Duluth, for appellants.

Jerome Arnold, Duluth, for defendant.

Barbara Russ, Duluth, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellants Kenneth and Lorrayne Hair commenced a personal injury action against respondents William Miller and St. Louis County. The jury found Miller 80 percent negligent and St. Louis County 20 percent negligent in causing the accident. The jury awarded $0 damages under every category of the special verdict form. The Hairs brought a motion for a new trial on the grounds the damage award was the result of the influence of passion and prejudice and that the verdict was not justified by the evidence regarding damages and the no-fault threshold damage questions. The trial court denied the motion. We affirm.

## FACTS

On August 31, 1982, a St. Louis County Deputy Sheriff collided with a pick-up truck driven by William Miller in which Kenneth Hair was a passenger. No medical attention was required at the scene. Witnesses observed a big crash and estimated the deputy's speed at the time of impact at approximately 30 miles per hour.

Hair testified he had been "whipped around" upon impact and that after the

accident he only felt the "sensation" of being in an accident and "didn't really feel too bad." A couple of days later he felt some tingling in his arms and legs and was a little stiff in his back and neck. He also stated his eyes were blurring but felt it was something that would go away. Hair waited thirteen weeks after the accident before receiving treatment.

Prior to the accident, Hair was involved in accidents or sustained work injuries of one form or another in 1970, 1973, 1975, 1976, 1977 and 1980, had received medical attention for other complaints in 1978, 1979, 1980 and 1981, and has an extensive medical history.

On December 1, 1982, Hair was seen by a physician complaining of neck pain, headaches and blurry vision.

On December 20, 1982, Hair began seeing a chiropractor who treated Hair 141 times in the following eleven months. At his deposition the chiropractor stated that Hair's symptoms, which developed about three days after the accident, included headaches, neck stiffness, blurred vision and a tingling sensation in both his shoulders and legs. He diagnosed a moderate to severe cervical sprain-strain syndrome, a tearing of muscles and ligaments that control the joint, and a moderate lumbar strain complicated by an L5 anomaly, which is a congenital defect in the fifth lumbar vertebra. The chiropractor testified the latter was not caused by the accident but only aggravated by the accident. The chiropractor concluded Hair sustained a permanent injury to the upper back and neck and to the lower back with a 20% disability to the spine, apportioning 5% to pre-existing injury and 15% directly to the August 1982 accident. The chiropractor was informed only of Hair's 1976 accident at time of examination and treatment.

The chiropractor referred Hair to a neurosurgeon who examined him on three different occasions, provided no treatment and only recommended use of heat, exercise and aspirin. The neurosurgeon's diagnosis was an aggravation of a prior low back problem and a new injury to Hair's neck as a result of the August 1982 accident, resulting in upper back disability of 8 to 10 percent, and a five percent disability on the body for emotional distress.

A chiropractor orthopedist, called by the defense, found no objective evidence of any injury related to the August car accident, concluding Hair had a long-standing lumbar problem not caused by the 1982 accident. He observed "that chances are that he did have some temporary mild muscle strain, which in a period of normally six to twelve weeks, should have healed without any problem whatsoever." He also found evidence of faking and exaggeration of pain by Hair during the neurological examination.

A neurologist, another defense witness, also concluded there was no physical impairment which would keep Hair from performing normal activities, stating Hair's "subjective symptoms are far out of proportion to the accident."

In response to Hair's claim of emotional injury, she stated:

It's a reaction to an accident which comes out of his prior psychological make-up.

She testified the blurred vision was not associated with a neck injury but was associated with anxiety and emotional distress caused by the accident.

## ISSUE

Should a new trial have been granted on the issue of damages under Minn.R.Civ.P. 59.01(5) and (7)?

## ANALYSIS

■ Minn.R.Civ.P. 59.01 (5) and (7) states a new trial may be granted for the following reasons:

(5) Excessive or insufficient damages, appearing to have been given under the influence of passion or prejudice;

\* \* \* \* \* \*

(7) The verdict, decision, or report is not justified by the evidence, or is contrary to law; \* \* \*.

*Id.* A trial court should be reluctant in granting a new trial.

A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*Lamb v. Jordan,* 333 N.W.2d 852, 855–56 (Minn.1983) (quoting *LaValle v. Aqualand Pool Co.,* 257 N.W.2d 324, 328 (Minn.1977)). "The trial judge, who has the feel of the trial, is in the best position to know if justice is best served by submitting the evidence to another jury." *Conover v. Northern States Power Co.,* 313 N.W.2d 397, 408 (Minn.1981).

 The jury's verdict must be affirmed if supported by the evidence. The jury chose to believe the defense chiropractor orthopedist who testified that Hair did not receive injuries in the August 1982 accident other than temporary mild muscle strain. As to the muscle strain, the jury could reasonably conclude that Hair's injuries were the result of his previous accidents and/or heavy lifting performed at various jobs.

As to Hair's emotional problems, there is evidence of pre-August 1982 anxiety problems.

In addition, there was evidence of malingering manifested by a February 20, 1973 personal history and physical form which stated: "A well developed, well nourished white male who appears to be giving the impression of having much more severe pain than is real."

Hair also gave each doctor limited information regarding his medical history, and during trial, denied involvement in the 1970 auto accident and denied having a stiff neck after the head-on collision in 1976. Only after having his memory refreshed through the use of his prior deposition did he admit the accident and the neck stiffness. His medical records also were at variance with his trial testimony.

Hair relies on *Pehrson v. Kistner,* 301 Minn. 299, 222 N.W.2d 334 (1974) in which the supreme court held that a verdict less than ascertainable special damages indicates prejudice. *Id.* at 303, 222 N.W.2d at 337. That case, however, is posited on the premise that both negligence and causation have been established. Here, there was no finding of causation between the negligent act and the claimed injuries.

### DECISION

Based upon a plethora of inconsistencies and contradictions inherent in both Hair's and the medical and chiropractic testimony, the jury's verdict must be sustained. The trial court's order denying appellants' motion for a new trial is affirmed.

Affirmed.